NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS PORTALATIN, | CIVIL ACTION NO. 17-3247 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| PRO PILOTS, LLC, | |
| Defendant. | |

**LINARES, Chief District Judge**

The plaintiff, Dennis Portalatin, brought this action in New Jersey state court to recover damages under the New Jersey Conscientious Employee Protection Act (hereinafter, "CEPA") against the defendant, Pro Pilots, LLC (hereinafter, "PPLLC"), which is his former employer. (See ECF No. 1-1.) See N.J.S.A. 34:19-1, *et seq.*

PPLLC removed this action to federal court pursuant to the Court's diversity jurisdiction. (See ECF No. 1 at 4.) See 28 U.S.C. § 1332. In the alternative, PPLLC removed the action pursuant to the Whistleblower Protection Program (hereinafter, "the WPP") for the Airline Deregulation Act, which covers certain claims brought by employees against their air-carrier employers. (See ECF No. 1 at 2.) See 49 U.S.C. § 41713; see also 28 U.S.C. § 1331.

PPLLC moves pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 12(b)(6) to dismiss Portalatin's CEPA claim, and argues that his claim is preempted by

the WPP. (See ECF No. 4 through ECF No. 4-2; ECF No. 6.) Portalatin opposes the motion. (See ECF No. 5.)

The Court will resolve the motion upon a review of the papers and without oral argument. See L.Civ.R. 78.1(b). The Court presumes the familiarity of the parties with the factual context and the procedural history of the action. For the following reasons, the Court grants the motion to dismiss. However, the Court grants Portalatin leave to institute an administrative proceeding under the WPP before the United States Department of Labor (hereinafter, "the USDOL") within 20 days.

## BACKGROUND

Portalatin was employed as an aircraft mechanic by PPLLC, which provides charter jet services. (See ECF No. 1-1 at 5.) As alleged by Portalatin in his complaint, he was subjected to a retaliatory termination in violation of CEPA under the following circumstances:

> 14. On or about January 25, 2017, Plaintiff was servicing [PPLLC's] aircraft no. 378DB. Plaintiff found a total of eight (8) discrepancies, most of which he was able to correct.
>
> 15. However, regarding a discrepancy "FUEL LEAKING FROM LH WING AND AFT FUSELAGE FWD OF REAR BAY" because [PPLLC] does not own hangar space at the Teterboro location, Plaintiff contacted Mr. Martin[, who was PPLLC's maintenance director,] and advised that he could not correct the fuel leak issue within the next few days.
>
> 16. Mr. Martin responded, "Let it go. We will get it fixed somewhere else. We have seven passengers we have to take. What does the pilot think?" Plaintiff responded, "The pilot is not the decision maker. I am the

2

mechanic. I'm not signing off for a fuel leak. You did this to me in California when I held an aircraft off for a fuel leak and you said the same thing but I saw that the plane flew after I left California." Mr. Martin's final response was, "I will get back to you."

17. After a few days, having not heard back from Mr. Martin, Plaintiff contacted Mr. Carney[, who is PPLLC's maintenance controller,] to ask the status of aircraft 378DB. Mr. Carney responded that he did not know but would find out and get back to Plaintiff.

18. The next communication from [PPLLC] was a letter dated January 31, 2017 terminating his employment "with immediate effect."

19. Plaintiff later learned that aircraft 378DB flew on February 1, 2017.

(ECF No. 1-1 at 6–7.) Portalatin then initiated this civil action on March 30, 2017, which was 58 days after he was terminated by PPLLC. (See ECF No. 1-1 at 4.)

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(6)

It is not necessary for the Court to restate the standard for resolving a motion to dismiss a complaint that is made pursuant to Rule 12(b)(6), because that standard has been already enunciated. See Palakovic v. Wetzel, 854 F.3d 209, 219–20 (3d Cir. 2017) (setting forth the standard, and explaining Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)); Fowler v. UPMC Shadyside, 578 F.3d 203, 209–12 (3d Cir. 2009) (setting forth the standard, and explaining Iqbal and Twombly).

3

### B. The WPP

The WPP specifically provides that:

> No air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee . . . provided . . . to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States.

49 U.S.C. § 42121(a)(1).

In addition, the Airline Deregulation Act contains a preemption provision, which applies to the WPP, and provides that: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1).

If an employee asserts that he was wrongfully terminated by his air-carrier employer for whistleblowing activity that had or could have had an effect on the service provided by that air carrier, then his remedy is to institute an administrative proceeding under the WPP within 90 days with the USDOL, which will in turn notify the Federal Aviation Administration. The USDOL is then authorized to issue a determination, which can include an order of reinstatement and an award of damages. The determination by the USDOL is then subject to review by the relevant United States Court of Appeals. Furthermore, if an air-carrier employer does not comply with the USDOL's determination,

the employee is then authorized to bring a federal civil action to compel compliance. See 49 U.S.C. § 42121(b); 29 C.F.R. Part 1979.

## II. Arguments

PPLLC argues in support of its motion to dismiss that Portalatin's CEPA claim is indeed preempted by the WPP, because his whistleblowing conduct had the potential to interrupt a specific flight that was scheduled by PPLLC for February 1, 2017. (See ECF No. 4-1.) Portalatin argues in opposition that his CEPA claim is not preempted by the WPP, because the connection between his whistleblowing conduct and PPLLC's provision of a specific flight is tenuous at best. (See ECF No. 5.)

## III. Analysis

The Third Circuit Court of Appeals has held that the "relating to" clause of the WPP is to be broadly interpreted to preempt all "state enforcement actions having a connection with, or reference to airline rates, routes, or services." Gary v. The Air Grp., Inc., 397 F.3d 183, 186 (3d Cir. 2005) (internal quotation marks, alterations, and citation omitted); see also Gervasio v. Cont'l Airlines, Inc., No. 07-5530, 2008 WL 2938047, at *3 (D.N.J. July 29, 2008) (holding that the WPP preempts state law whistleblower claims that are related to the service of an air carrier).

Furthermore, the term "service" is understood to encompass the "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." Flashman v. Jet Aviation Flight Servs., Inc., No. 14-1287, 2014 WL 4930909, at *2 (D.N.J. Oct 1, 2014) (quoting Taj Mahal Travel, Inc. v. Delta Airlines,

Inc., 164 F.3d 186, 193 (3d Cir. 1998)). Of particular relevance to this case, the WPP preempts any whistleblowing claim by an air-carrier's employee that "ha[d] the potential to interrupt service by grounding a <u>particular</u> flight." <u>Gary</u>, 397 F.3d at 189 (emphasis added).

If Portalatin had alleged that PPLLC terminated him for merely complaining about PPLLC's general mode of operation, then his claim would not be preempted by the WPP. See <u>Flashman</u>, 2014 WL 4930909, at *4–6 (holding that an employee's objection to the air-carrier employer's organizational structure would not delay or potentially delay a specific flight, because the connection of that claim to the transportation of passengers was tenuous, and thus the claim was not preempted). However, Portalatin's claim goes directly to PPLLC's provision of air-carrier service for seven passengers for a particular flight. In other words, Portalatin sought to delay a specific flight by PPLLC's Aircraft 378DB on February 1, 2017. As a result, his CEPA claim, which is based on conduct that had the potential to delay a specific flight from taking place, is preempted by the WPP. See <u>Cunningham v. Jet Aviation Flight Servs., Inc.</u>, No. 12-6594, 2013 WL 1758617, at *3–4 (D.N.J. Apr.24, 2013) (holding the same concerning CEPA claims that concerned the provision of air service on a particular flight).

Thus, because Portalatin's CEPA claim is preempted by the WPP, PPLLC's motion is granted. However, in order to avoid prejudicing Portalatin, the Court hereby orders that the time limit for Portalatin to undertake the administrative procedure under the WPP is tolled, and hereby orders that Portalatin is granted leave to institute a

proceeding in the USDOL within 20 days. See <u>Turgeau v. Admin. Review Bd.</u>, 446 F.3d 1052, 1059–61 (10th Cir. 2006) (holding that an airline employee should not be time-barred from instituting the administrative procedure under the WPP with the USDOL when, as is the situation in the instant matter, he initially attempted to proceed in court within the 90 day period).

## CONCLUSION

For the aforementioned reasons, the Court grants PPLLC's motion to dismiss. The Court will enter an appropriate order and judgment.

JOSE L. LINARES
Chief Judge, United States District Court

**Dated:** July 5th, 2017